No. 21-1868

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

Jonathan R., MINOR, BY NEXT FRIEND SARAH DIXON, ET AL.

*Plaintiffs-Appellants*

v.

JIM JUSTICE, ET AL.

*Defendants-Appellees*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

---

### Brief of Appellants

---

Richard W. Walters
rwalters@shafferlaw.net
J. Alexander Meade
ameade@shafferlaw.net
Shaffer & Shaffer, PLLC,
2116 Kanawha Boulevard, East
Post Office Box 3973
Charleston, West Virginia 25339-3973
Tel: (304) 344-8716
Fax: (304) 344-1481

Marcia Lowry
mlowry@abetterchildhood.org
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415

Lori Waller
lwaller@drofwv.org
Disability Rights of West Virginia
1207 Quarrier Street, Suite 400
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

***Counsel for Plaintiffs-Appellants***

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1868__     Caption: __Jonathan R., minor, by Next Friend et al. v. Jim Justice et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jonathan R., minor, by Next Friend, Sarah Dixon; et al.__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                      ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Richard W. Walters                    Date:    November 8, 2021

Counsel for: Plaintiff- Appellant

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................5

I. JURISDICTIONAL STATEMENT .................................................8

II. STATEMENT OF THE ISSUES .....................................................8

III. STATEMENT OF THE CASE .......................................................9

IV. SUMMARY OF THE ARGUMENT ............................................13

V. ARGUMENT ...............................................................................17

A. THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING
DEFENDANTS' MOTION TO ABSTAIN. ......................................19

  1. Standard of Review ..........................................................................19

  2. Under *Sprint*, Abstention Is Improper Unless the Case Falls Within One
of Three "Exceptional Circumstances." ............................................20

  3. The District Court Erred by Relying on Inapposite, pre-*Sprint* Authority
to Determine that this Case Was an "Exceptional Circumstance"
Warranting Abstention under *Sprint.* ...............................................21

  4. None of the *Middlesex* Factors Support Abstention ....................26

    a. Plaintiffs' claims do not challenge the constitutionality or legality of circuit
court decisions or practices, and thus do not interfere with any state court
proceedings .......................................................................................26

    b. Plaintiffs cannot raise their constitutional claims premised on Defendants'
class-wide misconduct in their individual circuit court proceedings................28

**B. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS'
MOTION TO DISMISS THE CLAIMS OF SIX NAMED PLAINTIFFS AS
MOOT.** ..................................................................................................**30**

   **1. Standard of Review** ........................................................................31

   **2. The Six Named Plaintiffs' Claims Fall Under the "Capable of Repetition,
   Yet Evading Review" Exception to Mootness.**....................................32

      a. Plaintiffs' claims cannot be fully litigated prior to their exit from foster care
      ...................................................................................................33

      b. Named Plaintiffs have a reasonable expectation of again being subject to the
      challenged actions .............................................................................34

      c. Named Plaintiffs' claims are inherently transitory, and thus class
      certification "relates back" to the time of filing...................................35

      d. Defendants' challenged conduct would otherwise evade review .................36

**VI.  CONCLUSION** ................................................................................**36**

**VII.  REQUEST FOR ORAL ARGUMENT** ......................................................**37**

## Table of Authorities

Page(s)

<u>**Cases**</u>

*Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 U.S. Dist. LEXIS 22993 (D. Md. Feb. 16, 2017) .................................................................22

*Ashley W., et al. v. Eric Holcomb, et al.*, Case No. 3:19-cv-00129-RLY-MPB (S.D. Ind. Sept. 29, 2021) ............................................................................14

*Baxley v. Jividen*, 508 F. Supp. 3d 28 (S.D. W. Va. 2020) ...................................35

*B.K. v. Snyder*, 922 F.3d 957 (9th Cir. 2019) .......................................................14

*Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194 (4th Cir. 2019) ........19, 20

*Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941 (M.D. Tenn. 2000) ......13, 27

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992) .......................................................34

*Brown v. Lexington Cty.*, No. 3:17-cv-1426-MBS, 2018 U.S. Dist. LEXIS 113976 (D.S.C. July 9, 2018)................................................................................27

*Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 U.S. Dist. LEXIS 190891 (D. Me. Oct. 4, 2021) ...................................................................................14, 22, 24

*Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J. 2000).....................................13

*Connor B. v. Patrick*, 771 F.Supp.2d 142 (D. Mass. 2011)...............................13, 27

*Covington v. North Carolina*, No. 1:15-cv-399, 2015 U.S. Dist. LEXIS 196293 (M.D.N.C. Nov. 25, 2015) ....................................................................22

*Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ...........................................35

*Dwayne B. v. Granholm*, No. 06-13548, 2007 U.S. Dist. LEXIS 28265 (E.D. Mich. Apr. 17, 2007) ........................................................................................13, 27

*Elisa W. v. City of N.Y.*, No. 15-cv-5273-LTS-HBP, 2017 U.S. Dist. LEXIS 141715 (S.D.N.Y. Sep. 1, 2017) .........................................................................31, 35

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) ............................................32

*Fernandes v. Craine*, 538 F. App'x 274 (4th Cir. 2013) ........................................20

*Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013) ...................................36

*Gerstein v. Pugh*, 420 U.S. 103 (1975).........................................................32, 34, 36

*Harper v. PSC*, 396 F.3d 348 (4th Cir. 2005)...........................................................19

*In re Taylor B.*, 201 W. Va. 60 (1997)......................................................................24

*In the Interest of J.L.*, 234 W. Va. 116 (2014)..........................................................29

*Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003) .................13, 27

*K.H. v. Morgan*, No. 87 C 9833, 1989 U.S. Dist. LEXIS 10516 (N.D. Ill. Sep. 6, 1989) ........................................................................................................................13

*K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990) ........................................................14

*LaShawn A. v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993) ............................................13

*Lawyer Disciplinary Bd. v. Thompson*, 238 W. Va. 745, 757 (2017) .....................29

*Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996)....................13

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ........................14, 35

*Martin v. Stewart*, 499 F.3d 360 (4th Cir. 2007) ...............................................19, 21

*M.B. v. Corsi*, No. 2:17-cv-04102-NKL, 2018 U.S. Dist. LEXIS 3232 (W.D. Mo. Jan. 8, 2018) .............................................................................................................13

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) ............................24

*M.D. v. Abbott*, 907 F.3d 237 (5th Cir. 2018)..........................................................14

*M.D. v. Perry*, 799 F. Supp. 2d 712 (S.D. Tex. 2011)............................................14

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ...................................................................................................................*passim*

*Moore v. Simms,* 442 U.S. 415, 418 (1979)..........................................20, 22, 23, 24

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) ........................................................................................................................17, 19

*O'Shea v. Littleton* 414 U.S. 488 (1974) ..............................................20, 22, 24, 25

*Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017) .......................................................31

*Powell v. McCormack*, 395 U.S. 486 (1969) ...........................................................32

*Sam M. v. Chafee*, 800 F. Supp. 2d 363 (D.R.I. 2011) ............................................13

*Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013).......................................*passim*

*State v. Keith A.*, No. 17-0262, 2018 W. Va. LEXIS 342 (May 11, 2018) .............24

*Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616 (D. Md. 2017)...............22

*Tinsley v. McKay*, 156 F.Supp.3d 1024 (D. Az. 2015)................................13, 14, 24

*T.F. v. Hennepin Cty.*, No. 17-1826 (PAM/BRT), 2018 U.S. Dist. LEXIS 25841 (D. Minn. Feb. 16, 2018) .......................................................................................13

*Wyatt B., et al. v. Kate Brown, et al.*, No. 6:19- cv-00556-AA, 2021 U.S. Dist. LEXIS 184389 (D. Or. Sept. 27, 2021) ...................................................................14

*Younger v. Harris*, 401 U.S. 37 (1971)...........................................................*passim*

## Statutes

28 U.S.C. § 1291 ....................................................................................................8

28 U.S.C. § 1331 ....................................................................................................8

28 U.S.C. § 1343 ....................................................................................................8

29 U.S.C. § 794 ......................................................................................................8

42 U.S.C. § 670 et. seq...........................................................................................8

42 U.S.C. § 12131 ..................................................................................................8

W. Va. Code § 49-2-1 .............................................................................................9

W. Va. Code § 49-6-2 ...........................................................................................29

## Rules

Rule 34 of the Fourth Circuit Local Rules of Appellate Procedure .......................37

Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings ...........................................................................................................29

Rule 6a of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings ...........................................................................................................29

## I.    JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), as well as under the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), 42 U.S.C. § 670 et. seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), Section 504 of the Rehabilitation Act ("Section 504" or "RA"), 29 U.S.C. § 794, and the respective implementing regulations. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## II.    STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion by disregarding *Sprint*'s clarification that abstention is only proper if a case falls squarely within one of three "exceptional circumstances."

2. Whether the district court abused its discretion when determining that this case constitutes an "exceptional circumstance" warranting abstention pursuant to *Sprint*.

3. Whether the district court abused its discretion by misconstruing Plaintiffs' allegations and requested relief in order to find this case met the *Middlesex* factors warranting abstention.

4. Whether the district court incorrectly concluded that the "capable of repetition, yet evading review" exception to mootness doctrine did not apply to the claims of six Named Plaintiff foster children asserting

8

system-wide challenges to a child welfare agency whose actions would otherwise be unreviewable.

## III.    STATEMENT OF THE CASE

Plaintiffs-Appellants ("Plaintiffs") represent the nearly 7,000 West Virginia foster children who, often as the result of abuse or neglect at home, rely on the West Virginia foster care system for their health, safety, and well-being. (*See* JA 086 at ¶ 31). Defendants-Appellees ("Defendants") are the Governor of West Virginia, and the state executive agency (the Department of Health and Human Resources, or "DHHR") and government officials responsible for operating the West Virginia foster care system. As an executive agency, DHHR is bound by statute "to provide care for neglected children who are committed to its care for custody or guardianship." W. Va. Code § 49-2-1.

Every child faces the same risks upon entry into the West Virginia child welfare system. For example, nearly a quarter of caseworker positions in the system remain vacant. (*See* JA 078 at ¶ 8.) Caseworkers also carry caseloads as high as fifty, despite nationally recognized standards that limit caseloads to between twelve and fifteen children per worker.  (*See* JA 148 and 149 at ¶¶ 298, 300.)   Because Defendants, as an executive agency, have consistently failed to remedy these deficiencies, all children entering the West Virginia foster care system are at risk of

having the most important decisions of their lives made by caseworkers who are overworked, undertrained, and/or unqualified.

Similarly, because Defendants, as an executive agency, fail to maintain enough safe and appropriate foster home placements, all children entering the West Virginia foster care system are at risk of sleeping in DHHR offices or hotels, (*see* JA 131 at ¶ 230) of being placed in a kinship home that Defendants fail to license, oversee, and/or support, (*see* JA 132 at ¶ 236.) or even of being shipped to an out-of-state residential facility. (*See* JA 132 at ¶ 236.) And as a result of any number of such systemic deficiencies in Defendants' operation of the West Virginia foster care system, all children entering foster care are at risk of languishing there for years. (*See* JA 154 at ¶ 328.)

Plaintiffs filed this case on behalf of twelve Named Plaintiffs, six of whom remain after the district court dismissed the other six's claims as moot.[1]

---

[1] The remaining six Named Plaintiffs assert live claims on behalf of the General Class and their respective Subclasses. Karter W. is a member of the General Class and the ADA Subclass. (*See* JA 116 at ¶ 164.) Ace L. is a member of the General Class and the ADA Subclass. (*See* JA 120 at ¶ 183.) Dennis C. is a member of the General Class, the Kinship Class, the ADA Subclass, and the Aging Out Subclass. (*See* JA 110 at ¶ 137.) Theo S. is a member of the General Class and the ADA Subclass. (*See* JA 098 at ¶ 76.) Anastasia M. is a member of the General Class and the ADA Subclass. (*See* JA 093 at ¶ 55.) Jonathan R. is a member of the General Class, the Kinship Subclass, the ADA Subclass, and the Aging Out Subclass. (*See* JA 090 at ¶ 42.)

Karter W. is a teen who has been in Defendants' custody and care since 2016. (*See* JA 116 at ¶ 164.) His first placement after entering Defendants' custody was in a foster home where he was forced to live in the basement, which he was permitted to leave only for dinner and to attend school. (*See* JA 117 at ¶ 168.) At the time of filing, Karter was placed at a psychiatric treatment facility in Virginia, more than five hours from his home. (*See* JA 118 at ¶ 177.)

Ace L. is an older youth who has also been in Defendants' custody and care since 2016. (*See* JA 120 at ¶183.) He suffers from encopresis, which is often a response to physical and sexual trauma. (*See* JA 120 at ¶ 185.) However, as of the time of filing, Ace had received no therapeutic interventions to address the underlying abuse or his encopresis. (*See* JA 120 at ¶ 185.)

Dennis C. is an older youth who has been in Defendants' custody and care since he was eleven. (*See* JA 110 at ¶ 137.) Despite his history of trauma and his cerebral palsy diagnosis, however, as of filing, Defendants have never provided Dennis with a therapeutic or special needs placement. (*See* JA 111 at ¶ 142.) Instead, Dennis was placed in group homes and other institutional settings; his placement at the time of filing was at a residential facility where he receives a higher level of care than he actually requires. (*See* JA 112 at ¶ 147.)

Theo S. is a young child who has been in Defendants' custody and care since he was three. (*See* JA 099 at ¶ 82.) In a little over two years, Theo was cycled through

11

eleven placements. (*See* JA 100 at ¶¶ 91-92.) When Theo was six, he was placed in a treatment facility in Virginia, over five hours away from his home. (*See* JA 101 at ¶ 95.) He remained there at the time of filing. (*See* JA 102 at ¶¶ 100-101.)

Anastasia M. is an adolescent who has been in Defendants' custody and care twice, first entering care when she was four years old. (*See* JA 093 at ¶ 56.) She re-entered care at the age of ten, (*see id*.), and subsequently experienced seven different placements in just six months. (*See* JA 094 at ¶ 59.) She has also spent months in emergency shelters. (*See* JA 094 at ¶ 61.) At the time of filing, Anastasia was placed in a facility in Georgia, which has a history of sexual assault allegations. (*See* JA 095 at ¶ 63.)

Jonathan R. is a teenager who, at the time of filing, had spent most of his past seven years in institutional care. (*See* JA 090 at ¶ 42.)

The court dismissed as moot the claims of the six other Named Plaintiffs: Serena S. (*see* JA 095-098 at ¶¶ 66-75); Gretchen C. (*see* JA 107-110 at ¶¶ 121-136); Calvin, Carolina, and Chris K. (*see* JA 113-116 at ¶¶ 152-163); and Garrett M. (*see* JA 102-106 at ¶¶ 102-120).

Plaintiffs filed their Complaint on October 1, 2019. Defendants moved to dismiss Plaintiffs' Complaint on November 26, 2019. Defendants also filed four motions moving to dismiss Named Plaintiffs' claims as moot between February 2020 and November 2020. Plaintiffs opposed each of these motions. On July 28,

2021, the district court granted Defendants' motion to dismiss on abstention grounds, and motions to dismiss the claims of six Named Plaintiffs on mootness grounds. On August 4, 2021, Plaintiffs filed their Notice of Appeal.

## IV.    SUMMARY OF THE ARGUMENT

In the last fifteen years no other federal court has abstained from hearing class claims asserted by foster children against the child welfare agency bound to care for and protect them. Under the majority view, federal courts can, and must, exercise jurisdiction over claims that target state executive branch policies and practices rather than policies and practices of the state courts. *See, e.g., T.F. v. Hennepin Cty.*, No. 17-1826 (PAM/BRT), 2018 U.S. Dist. LEXIS 25841 (D. Minn. Feb. 16, 2018); *M.B. v. Corsi*, No. 2:17-cv-04102-NKL, 2018 U.S. Dist. LEXIS 3232 (W.D. Mo. Jan. 8, 2018); *Tinsley v. McKay*, 156 F.Supp.3d 1024 (D. Az. 2015); *Connor B. v. Patrick*, 771 F.Supp.2d 142 (D. Mass. 2011); *Sam M. v. Chafee*, 800 F. Supp. 2d 363, 380 (D.R.I. 2011); *Dwayne B. v. Granholm*, No. 06-13548, 2007 U.S. Dist. LEXIS 28265 (E.D. Mich. Apr. 17, 2007); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J. 2000); *Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941 (M.D. Tenn. 2000); *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996); *LaShawn A. v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993); *K.H. v. Morgan*, No. 87 C 9833, 1989 U.S. Dist. LEXIS 10516 (N.D. Ill. Sep. 6, 1989). "[T]he overwhelming majority of cases

have rejected *Younger* abstention in similar lawsuits challenging foster care systems, both at the circuit and district court level." *M.D. v. Perry*, 799 F. Supp. 2d 712, 723 (S.D. Tex. 2011).[2] Since the court's decision to abstain in July 2021, three more district courts also have decided to retain jurisdiction over similar foster care class actions and thus have joined the majority view. *See Wyatt B., et al. v. Kate Brown, et al.*, No. 6:19- cv-00556-AA, 2021 U.S. Dist. LEXIS 184389, at *17-18 (D. Or. Sept. 27, 2021) ("[A]s in *Tinsley*, Plaintiffs' claims are aimed at state agencies, specifically DHS, rather than at the Oregon juvenile courts"; "significant aspects" of the child welfare system "are reserved to DHS . . . and Plaintiffs' claims are directed at those very aspects"); *Ashley W., et al. v. Eric Holcomb, et al.*, Case No. 3:19-cv-00129-RLY-MPB (S.D. Ind. Sept. 29, 2021) ("Plaintiffs are not asking the court to regulate the day-to-day conduct of state-court CHINS proceedings . . . They are asking the court to assess the constitutionality of DCS' actions and failures to address systematic deficiencies within the foster care system."); *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 U.S. Dist. LEXIS 190891, at *22 (D. Me. Oct. 4, 2021) ("[N]umerous district courts have held in cases challenging the

---

[2] The Second, Fifth, Seventh, and Ninth Circuit Courts have all accepted the majority view by allowing challenges to the foster care system to proceed in federal court. *See B.K. v. Snyder*, 922 F.3d 957 (9th Cir. 2019); *M.D. v. Abbott*, 907 F.3d 237 (5th Cir. 2018); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997); *K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990).

administration of a state's foster care system that *Younger* abstention is not appropriate.") (internal quotation omitted).

In dismissing Plaintiffs' case, the lower court committed three errors, each of which on its own constitutes an abuse of discretion that necessitates the reversal of the lower court's decision.

First, the district court committed an error of law by failing to apply the correct standard for abstention under *Younger v. Harris*, 401 U.S. 37 (1971). In 2013, the Supreme Court made clear that the three factors articulated in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, were only "*additional* factors appropriately considered by the federal court before invoking *Younger*." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 81 (2013). In other words, district courts may only consider the *Middlesex* factors after determining that the state court proceedings in question fall under one of three "exceptional circumstances" laid out in *Sprint*.

The district court failed to apply this standard, deciding instead that Plaintiffs' individual circuit court proceedings were a "hybrid" of two categories of "exceptional circumstances." (JA 233.) *Sprint* plainly "extends [abstention] to the three 'exceptional circumstances' . . . but no further." *Sprint*, 571 U.S. at 82. By expanding the Supreme Court's holding in *Sprint*, the district court abused its discretion, necessitating reversal.

Second, the district court's *Sprint* analysis relied exclusively upon inapposite, pre-*Sprint* decisions that contravene *Sprint*'s holding, by failing to consider whether the case at issue fell within one of the three "exceptional circumstances" warranting abstention. The district court's conclusions thus rest on outdated and erroneous abstention principles. The district court also ignored an entire body of more recent and more analogous class action challenges to foster care systems finding that when plaintiffs challenge state executive agency conduct—as here—abstention is unwarranted. *See supra* Sec. IV at pp. 13-14. Had the district court acknowledged and applied the abstention principles underlying *Sprint* and other recent foster care decisions, it would have correctly determined that this case does not fit within any of *Sprint*'s three "exceptional circumstances," rendering abstention unwarranted.

Third, the district court relied upon its own unsupported observations and conclusions when determining that the three *Middlesex* factors warranted abstention. Once again, the district court relied almost exclusively on decades-old pre-*Sprint* authority while ignoring more recent, and more analogous, foster care class action precedent.

In addition to dismissing Plaintiffs' claims on abstention grounds, the district court incorrectly dismissed six individual Named Plaintiffs' claims as moot. Foster children's system-wide challenges to state executive agencies, however, fall under the "capable of repetition, yet evading review" exception to mootness doctrine. The

exception is meant to protect claims like Plaintiffs', which arise from Defendants' conduct towards them during their temporary and unpredictable stays in foster care.[3] The district court's ruling would make child welfare agencies effectively impervious to civil rights litigation. Accordingly, the district court's dismissal of those Named Plaintiffs' claims was improper and should be reversed.

## V.    ARGUMENT

Under *Younger,* and as later clarified by the Supreme Court in *New Orleans Pub. Serv., Inc.* ("NOPSI") and *Sprint*, abstention doctrine's narrow intended purpose is to prevent federal court interference with state court proceedings. S*ee generally Younger*, 401 U.S. 37 (1971); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989); and *Sprint,* 571 U.S. 69 (2013). The ruling of the district court, however, threatens to expand *Younger* abstention into a shield for state executive agencies evading legal responsibility for their unconstitutional and illegal behavior. As a state executive agency and the government officials responsible for operating the West Virginia foster care system, Defendants bear sole responsibility for hiring, training, and retaining enough child welfare caseworkers, for instance, and for securing and supporting enough foster homes for foster children to live in. When the state abdicates those duties, as Defendants have done in West

---

[3] This case was already subject to a four-month stay, rendering the mootness exception particularly appropriate.

17

Virginia, children suffer. Plaintiffs allege that Defendants' failures are so chronic, widespread, and severe that they amount to violations of those West Virginia children's constitutional and statutory rights.

Defendants moved to dismiss Plaintiffs' claims on abstention grounds. They contend that Plaintiffs' allegations of agency-wide dysfunction and deficiency are actually complaints about each child's individual West Virginia circuit court proceedings. Because the state circuit courts ratify the case plans, services, and placements that Defendants supply, Defendants reason only circuit courts should be held accountable for the harms suffered by Plaintiff Children. But Plaintiffs do not complain about the propriety of individual circuit court decisions, and Plaintiffs' legal injuries do not stem from individual circuit court outcomes. Rather, Plaintiffs allege class-wide constitutional and federal statutory harms that result from *Defendants'* class-wide and systemic misconduct. Plaintiffs could never raise their class-wide claims during any individual child's circuit court proceedings. Nor are state circuit courts equipped to offer the kind of class-wide injunctive relief necessary to remedy Defendants' systemic deficiencies. West Virginia's circuit court judges are tasked with approving the individual case plans, placements, and services developed by Defendants, not with correcting Defendants' system-wide failures as an executive agency.

The West Virginia district court nevertheless abstained from exercising jurisdiction because "[a] ruling favorable to Plaintiffs would interfere with and disrupt these state court proceedings." (JA 240.)

## A. THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING DEFENDANTS' MOTION TO ABSTAIN.

The Supreme Court has "carefully defined . . . the areas in which [*Younger*] abstention is permissible, [so] it remains the exception, not the rule." *NOPSI*, 491 U.S. at 359 (internal quotations omitted); *see also Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) ("The Supreme Court has *never* allowed abstention to be a license for free-form *ad hoc* judicial balancing . . . The Court has instead defined specific doctrines that apply in particular classes of cases."). Because "federal courts have a virtually unflagging obligation to exercise their jurisdiction[,] . . . [a]bstention doctrines constitute extraordinary and narrow exceptions to a federal court's duty to exercise the jurisdiction conferred on it." *Id.* at 363 (internal citations omitted). "Consequently, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Id.*

### 1. Standard of Review

The Fourth Circuit reviews a district court's decision to abstain for abuse of discretion. See *Harper v. PSC*, 396 F.3d 348, 351 (4th Cir. 2005). A district court abuses its discretion "whenever its decision is guided by erroneous legal principles," or "when it makes an error of law." *Martin*, 499 F.3d at 363; *see also Brandon v.*

*Guilford Cty. Bd. of Elections*, 921 F.3d 194, 199 (4th Cir. 2019) (abuse of discretion where opinion was "an outlier decision, standing apart from the near-unanimous precedents on the subject"); *Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013) (abuse of discretion where opinion "contravened . . . precedent").

### 2. Under *Sprint*, Abstention Is Improper Unless the Case Falls Within One of Three "Exceptional Circumstances."

The Supreme Court "define[d] *Younger*'s scope" in *Sprint*, which held that *Younger* does not apply "outside these three 'exceptional' categories" of cases: 1) where the federal court would intrude into "ongoing state criminal prosecutions," 2) "certain 'civil enforcement proceedings,'" and 3) where the federal court would "interfer[e] with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. As the Court emphasized, "*Younger* extends to [those] three 'exceptional circumstances . . . but no further." *Id.* at 82.

The district court, however, did not determine this case fit within one of *Sprint's* three exceptional categories. Instead, the district court identified this case as "a hybrid of both the second and third categories of cases," as it "involve[s] state-initiated abuse and neglect proceedings like in *Moore v. Sims*," and "ask[s] this Court to issue an injunction 'aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state' abuse and neglect proceedings, like in *O'Shea v. Littleton*." (JA 233.) In other words, the district court

only determined that this case shares some characteristics of the second *Sprint* category, and some characteristics of the third *Sprint* category.[4]

*Sprint* commands that *Younger* applies only to cases fitting squarely within one of the three "exceptional circumstances" that *Sprint* identified. *See Sprint*, 571 at 73 (recognizing that "the general rule [otherwise] governs"). Because "the Supreme Court has *never* allowed abstention to be a license for free-form *ad hoc* judicial balancing," *Martin*, 499 F.3d at 364, this abuse of discretion alone necessitates reversal.

### 3. The District Court Erred by Relying on Inapposite, pre-*Sprint* Authority to Determine that this Case Was an "Exceptional Circumstance" Warranting Abstention under *Sprint.*

*Sprint* clarified that the *Middlesex* factors "were not dispositive" but rather only "*additional* factors appropriately considered by the federal court before invoking *Younger*." *Sprint*, 571 U.S. at 81. Otherwise, the *Sprint* Court warned:

> [T]he three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'

---

[4] To the extent the district court concluded this case was a "hybrid" because it fit, independently, into both categories, that conclusion was plainly erroneous. "Circumstances fitting within the *Younger* doctrine, we have stressed, are 'exceptional.'" *Sprint*, 571 U.S. at 73.

*Id.* at 81-82.

Courts in the Fourth Circuit have recognized that *Sprint* "narrowed considerably the reach of the *Younger* doctrine." *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 625 (D. Md. 2017); *see also Covington v. North Carolina*, No. 1:15-cv-399, 2015 U.S. Dist. LEXIS 196293, at *9 (M.D.N.C. Nov. 25, 2015). On these grounds, courts have found "cited cases . . . inapposite [when] they are . . . pre-*Sprint*." *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 U.S. Dist. LEXIS 22993, at *13 (D. Md. Feb. 16, 2017); *see also Bryan C.*, 2021 U.S. Dist. LEXIS 190891, at *17 ("Defendants rely on the outdated *Middlesex* framework . . . The cases cited by the Defendants—all of which pre-date *Sprint*—do the same . . . The Supreme Court eschewed this approach in *Sprint*.").

Despite the breadth of relevant precedent, the district court relied exclusively on outdated and inapposite pre-*Sprint* authority that—as *Sprint* itself unambiguously rejected—extends *Younger* to civil proceedings involving no more than an "important state interest." Throughout the thirteen pages of the decision that discuss *Younger*, the district court fails even to reference a single post-*Sprint* decision. Neither *Moore* nor *O'Shea*—the two pre-*Sprint*, decades-old cases on which the district court primarily relied—support the court's decision to abstain.

Plaintiffs in *Moore*—a husband, wife, and their three children—challenged the constitutionality of a Texas statute as it was applied during the same removal

proceedings that had enabled the state to take custody of the children. 442 U.S. 415, 418-19 (1979).[5] Those removal proceedings, which the state had initiated directly against the parents, remained ongoing when plaintiffs filed their claims in federal court. *Id.* at 421.

The Supreme Court in *Moore* had found abstention "fully applicable to civil proceedings in which important state interests are involved." *Id.* at 423. This is precisely what *Sprint* later warned against. *See Sprint* at 81 ("Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest."). And yet, this is precisely what the West Virginia district court concluded. (*See* JA 232 ("Although *Younger* involved state criminal proceedings, the Supreme Court has expanded its application to 'noncriminal judicial proceedings when important state interests are involved.'").)

Moreover, the Texas state court proceedings at issue in *Moore* were initiated *against* plaintiff-parents; those proceedings resulted in the removal of plaintiff-parents' children. Here, Plaintiffs' circuit court proceedings only ratify the placements and services that Defendants supply; they are not initiated *against*

---

[5] To be sure, unlike the plaintiffs in *Moore*, Plaintiffs here do not challenge the constitutionality of any state statute.

Plaintiff Children. To the contrary, they serve Plaintiff Children's best interests.[6]
And to be sure, nothing in *Moore* prevented a Texas district court from rejecting
*Younger* abstention in a foster care class action challenging the Texas foster care
system. *M.D.*, 799 F.Supp. 2d at 726; *see also M.D. ex rel. Stukenberg v. Perry*, 675
F.3d 832, 835 (5th Cir. 2012) (exercising jurisdiction over class action alleging
"class-wide injuries caused by systemic deficiencies" in Texas' administration of
child welfare system).

The district court also committed a legal error by analogizing Plaintiffs' case
to *O'Shea v. Littleton*, in which plaintiffs sought injunctive relief targeting "the
occurrence of specific events that might take place in the course of *future state
criminal trials*." 414 U.S. 488, 500 (1974) (emphasis added). The district court
abused its discretion by relying on *O'Shea* out of context. (JA 233 ("Plaintiffs are
also asking this Court to issue an injunction 'aimed at controlling or preventing the
occurrence of specific events that might take place in the course of future state' abuse

---

[6]*See State v. Keith A.*, No. 17-0262, 2018 W. Va. LEXIS 342, at *4-5 (May 11,
2018); *see also In re Taylor B.*, 201 W. Va. 60, 66 (1997); *Bryan C.*, 2021 U.S. Dist.
LEXIS 190891 at *18 ("While it is true that a state-initiated proceeding to gain
custody of children allegedly abused by their parents could fall into this [quasi-
criminal] category," foster children's state court proceedings "are not attempts to
sanction a party" and "lack any element that could put them into the quasi-criminal
category."); *Tinsley*, 156 F. Supp. 3d at 1034 ("periodic reviews differ from
emergency removals like the one at issue in *Moore* . . . They do not qualify as quasi-
criminal for purposes of *Younger*.").

and neglect proceedings, like in *O'Shea*.").) It was the *criminal* character of the underlying proceedings in *O'Shea* that rendered abstention warranted. As Plaintiff children's circuit court proceedings are plainly non-criminal (*see supra* at pp. 23-24), *O'Shea* does not support abstention in this case.

The district court also erroneously concluded that abstention was warranted since "the proposed relief contemplated in *O'Shea* appears quite similar to Plaintiffs' request here." (JA 234.) But plaintiffs in *O'Shea* sought to enjoin discriminatory state court practices, such as bond-setting, sentencing, and jury-fee practices. *See O'Shea*, 414 U.S. at 495. The requested relief, the Supreme Court determined, "would require for its enforcement the continuous supervision by the federal court over . . . future criminal trial proceedings," and would thus threaten "continuous or piecemeal interruptions of the state proceedings by litigation in the federal courts." *Id.* at 500-01. Unlike in *O'Shea*, Plaintiffs here do not challenge any practices of the circuit courts of West Virginia. Plaintiffs' requested injunctive relief targets only the executive actions of DHHR. (*See* JA 175 at ¶ 405.)

Lastly, the district court failed to apply, or make any effort to distinguish, more recent precedent establishing that challenges to child welfare executive agency actions do not interfere with foster children's state court proceedings warranting abstention. *See supra* Sec. IV at pp. 13-14. By making its *Sprint* determinations based only on pre-*Sprint* authority that directly contravenes *Sprint*'s holding and

ignoring entirely the abstention precedent established by more recent foster care class actions, the district court committed an abuse of discretion, causing it to become an outlier.

### 4. <u>None of the *Middlesex* Factors Support Abstention</u>

As Plaintiffs' circuit court proceedings do not amount to quasi-criminal proceedings under *Sprint*, *see supra* Sec. V.A.3, the district court should have declined to abstain without proceeding to analyze Plaintiffs' claims under *Middlesex*. Regardless, even under *Middlesex*, abstention here is unwarranted. Under *Middlesex*, courts should consider whether the federal action would interfere with an ongoing state proceeding; whether the proceedings implicate important state interests; and whether the proceedings provide an adequate opportunity to raise constitutional challenges. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The district court abused its discretion to find this case meets all the *Middlesex* factors.

#### a. Plaintiffs' claims do not challenge the constitutionality or legality of circuit court decisions or practices, and thus do not interfere with any state court proceedings

The district court misconstrued both Plaintiffs' claims and requested relief to reach the unsupported conclusion that this case would "interfere with" Plaintiff Children's circuit court proceedings. The district court erroneously concluded that simply because West Virginia circuit courts "play an important role" or are "heavily

involved" in individual children's abuse and neglect proceedings by ratifying the placements and services supplied by Defendants, "[a] ruling favorable to Plaintiffs would interfere with and disrupt these ongoing state court proceedings." (JA 237 and 240.) This is not interference within abstention doctrine. *See Brown v. Lexington Cty.*, No. 3:17-cv-1426-MBS, 2018 U.S. Dist. LEXIS 113976, at *20 (D.S.C. July 9, 2018) (where plaintiffs "are not seeking review of Plaintiffs' individual" state court decisions but rather "a declaration that Defendants' alleged [executive] policies or practices . . . are unconstitutional, and an injunction enjoining those practices . . . the first *Middlesex* factor is not satisfied").[7]

The district court likewise misconstrued Plaintiffs' requested relief, declaring without support that it would be issuing orders "concerning which placement decision or which services were best for a child." (JA 240.) Plaintiffs' requested relief, as explained *supra* Sec. V.A.3 at p. 25, would require only the issuance of orders to enjoin *Defendants* from engaging in unconstitutional and illegal conduct.

---

[7] *See also Connor B.*, 771 F. Supp. 2d at 157 ("Any indirect impact this case has on the juvenile courts is slight and fails to rise to the requisite level of interference" under *Younger*); *Kenny A.*, 218 F.R.D. at 286 ("relief requested by plaintiffs would not interfere with ongoing juvenile court proceedings" because "relief directed solely at *executive* branch defendants"); *Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at *20 (no interference because relief "is directed at the executive branch"); *Brian A.*, 149 F. Supp. 2d at 957 ("[N]othing about this litigation seeks to interfere with or enjoin those [individual state court] proceedings. Rather, Plaintiffs seek injunctive relief against the Department of Children's Services, not the courts.").

It was an abuse of discretion, accordingly, for the district court to find the first *Middlesex* factor met.

### b. Plaintiffs cannot raise their constitutional claims premised on Defendants' class-wide misconduct in their individual circuit court proceedings

The distinct legal framework governing abuse and neglect proceedings in West Virginia could never allow for Plaintiffs to litigate their complex class-action claims—let alone obtain class-wide injunctive relief—in "the periodic review proceedings conducted as a part of these children's ongoing abuse and neglect proceedings." (JA 244.) The district court erred in concluding otherwise.

This class action seeks to represent around 7,000 foster children. Plaintiffs' claims arise from structural deficiencies in the West Virginia foster care system that extend beyond any one child, and the injunctive relief necessary to remedy those structural deficiencies likewise extends beyond any one child. Besides the obvious inefficiencies of litigating Plaintiffs' claims in 7,000 different individual circuit court proceedings, there are a number of legal and practical obstacles that prevent Plaintiffs from raising their constitutional and federal statutory class claims during those proceedings—none of which the district court considered.

As an initial matter, litigating such constitutional class claims during an individual circuit court proceeding would violate West Virginia law. The West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings ("RPCANP") establish—unequivocally—that "[u]nder no circumstances shall a child abuse and

28

neglect proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding." RPCANP Rule 5. *See also Lawyer Disciplinary Bd. v. Thompson*, 238 W. Va. 745, 757 (2017) ("[C]hild abuse and neglect proceedings [must be] afforded the highest priority by our courts and must be resolved as expeditiously as possible."); W. Va. Code § 49-6-2(d). Raising complex constitutional class claims during individual circuit court proceedings would result in delay to those proceedings' primary function—which is to ratify individual children's placements and services as quickly as possible to ensure child safety and well-being. Individual circuit court proceedings thus do not provide an adequate opportunity to raise Plaintiffs' claims.

Plaintiffs could also never raise their constitutional class claims during their individual proceedings for the practical reason that precedent does not exist in such proceedings. "Because child [] abuse proceedings are confidential in nature, access to the records of such cases is limited, with even the family court being afforded restricted access to only certain documents in an abuse and neglect case file." *In the Interest of J.L.*, 234 W. Va. 116, 121 (2014); RPCANP Rule 6a(b) ("All records and information maintained by the courts in child abuse and neglect proceedings shall be kept confidential except as otherwise provided."). Plaintiffs' claims cannot be raised, let alone decided, without precedent or any prior case law at all. For that

practical reason, individual circuit court proceedings do not provide an adequate opportunity to raise Plaintiffs' claims.

To be sure, the West Virginia Supreme Court has admonished attorneys for attempting to address the "perceived systemic failures of DHHR" during individual abuse and neglect proceedings. *See Thompson*, 238 W. Va. at 757 (attorney "failed to represent her infant client's interests" by "hold[ing] the child's case hostage in a grossly misplaced attempt at advancing her views regarding the perceived failures of DHHR"). In "delaying the appellate process and thereby prolonging the permanency determination," the state court determined, the attorney had "violated the duties . . . owed to the legal system and to the profession." *Id.*

### B. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS THE CLAIMS OF SIX NAMED PLAINTIFFS AS MOOT.

The district court erred in dismissing as moot the claims of Serena S., Gretchen C., the sibling group Chris K., Calvin K., and Carolina K., and Garrett M. (*See* JA 231.) Its decision contravenes precedent establishing that systemic challenges to child welfare agencies asserted by foster children fall under the "capable of repetition yet evading review" exception to mootness. The foster care population is inherently transitory. Children are in care only temporarily, and they enter, exit, and often re-enter care unpredictably. Moreover, without the "capable of

repetition yet evading review" exception to mootness, child welfare agency actions would be effectively unreviewable.

Importantly, even if this Court finds the district court did not improperly dismiss the claims of those Named Plaintiffs, this case may proceed on the remaining six Named Plaintiffs' claims. The district court acknowledged that its decision to dismiss the claims of the six Named Plaintiffs did not dismiss the case as a whole, recognizing that "six other named Plaintiffs remain." (JA 231.) These six Named Plaintiffs assert live claims upon which class certification may be granted. *See Elisa W. v. City of N.Y.*, No. 15-cv-5273-LTS-HBP, 2017 U.S. Dist. LEXIS 141715, at *12 (S.D.N.Y. Sep. 1, 2017) ("[T]he Court has the power upon certification of the class to relate that certification back to the date of the original complaint, when all the Named Plaintiff Children were in [child welfare agency] custody."). Moreover, class certification briefing has been complete since December 2020. At that time, six Named Plaintiffs—Karter W., Ace L., Dennis R., Theo S., Anastasia M., and Jonathan R.—were all still in foster care and had standing.

### 1. Standard of Review

Because "the relevant jurisdictional facts are not in dispute," the Fourth Circuit should "review a district court's dismissal based on mootness de novo." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). The parties do not dispute the fact that at the time of the court's dismissal, the six Named Plaintiffs in question

were not in DHHR custody or care, as a result of either the Named Plaintiff's adoption or the Named Plaintiff's "aging out" of foster care. The Fourth Circuit should therefore review the district court's legal conclusion—that six Named Plaintiffs' claims are moot—*de novo*.

### 2. The Six Named Plaintiffs' Claims Fall Under the "Capable of Repetition, Yet Evading Review" Exception to Mootness.

Generally, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). However, where claims are "capable of repetition, yet evading review," they fall under an "exception to that requirement." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). "[T]he exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).

The West Virginia district court erred in declining to apply the "capable of repetition yet evading review" exception. (JA 227-229.) The exception was meant to protect claims such as those asserted by Plaintiffs.

32

a. Plaintiffs' claims cannot be fully litigated prior to their exit from foster care

According to the district court, Plaintiffs' argument that "'foster care is intended to be a short-term, temporary stay for children'. . . is in direct conflict with Plaintiffs' continuing arguments that children in West Virginia's foster care system 'languish' for years." (JA 228.) The court further noted several of the Named Plaintiffs have been in foster care for years, "which undermines Plaintiffs' argument that the children's time in DHHR custody is too short to allow this action to be fully litigated." (JA 227.)

While some children do languish in foster care for years, a child's time in foster care is intended to be temporary. Named Plaintiffs represent the harm, and risk of harm, all children in West Virginia's foster care system are exposed to as a result of DHHR's actions and inactions—which is why their stays are often *not* temporary. Plaintiffs' Complaint moreover merely alleges that all children are at risk of languishing in foster care for years—not that all children, in fact, do. That many Named Plaintiffs "languished" in foster care does not disprove that foster care is intended to be short-term and temporary, involving durations too short to be properly litigated in a class action context.

Because foster care is intended to be short-term and temporary, and there is no way of predicting how long a child's stay in foster care will be, the Named Plaintiffs satisfy the first prong of the "capable of repetition, but evading review"

33

test.  In *Gerstein*, the Supreme Court found pretrial detainees' claims not moot because "[t]he length of pretrial custody cannot be ascertained at the outset" and "[i]t is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." 420 U.S. at 110 n.11; *see also Brody v. Spang*, 957 F.2d 1108, 1113 (3d Cir. 1992) ("[T]he length of the school year . . . is clearly too short to complete litigation and appellate review"). The claims of foster children such as Named Plaintiffs, similarly, are so short in duration that they evade review.

> b. Named Plaintiffs have a reasonable expectation of again being subject to the challenged actions

According to the district court, Named Plaintiffs do not face a reasonable expectation of re-entry into foster care because such a possibility "is contradicted by the facts of this case." (JA 229.) The court pointed only to the fact that those Named Plaintiffs had not "returned" to state custody since exiting in 2019 and 2020. (*See* JA 229.) But not even adoption precludes re-entry into foster care. In fact, as alleged in Plaintiffs' Complaint, this is exactly what happened to Named Plaintiff Anastasia M.  Anastasia M. first entered foster care at age four and was adopted, but re-entered foster care for the second time at age ten. (*See* JA 093 at ¶ 56.) Anastasia M. had been adopted for three and a half years when the placement disrupted. (*See* JA 094 at ¶ 60.) And Named Plaintiff Ace L., for example, has been in foster care twice. (*See* JA 120 at ¶ 184.)

Courts have recognized that children can and do re-enter foster care. *See Elisa W.*, 2017 U.S. Dist. LEXIS 141715, at *11 ("Some children will enter and leave [the child welfare system's] custody multiple times during their lives because of factors entirely outside of their control.").

> c. Named Plaintiffs' claims are inherently transitory, and thus class certification "relates back" to the time of filing

The district court declined to apply the "relation back" doctrine to the claims of the six Named Plaintiffs, which would permit them to remain as class representatives. However, the Supreme Court has held that "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). "In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *Id*.

Courts have held that the claims of foster children are inherently transitory. *See Marisol A.*, 1998 U.S. Dist. LEXIS 7726, at *20 (foster care populations are "fluid, making the provision of legally mandated foster care services inherently transitory. Children enter and leave the system all the time . . . the goal of foster care is to locate appropriately permanent placements for children, not to have them remain in the child welfare system."); *see also Baxley v. Jividen*, 508 F. Supp. 3d 28, 44 (S.D. W. Va. 2020) ("The length of detention at WVDCR's jails generally

35

cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory.") Plaintiffs' class claims therefore "relate back" to the time of filing.

### d. Defendants' challenged conduct would otherwise evade review

Plaintiffs allege DHHR's deficiencies are "chronic," (JA 081 at ¶ 10) and their policies and practices "routinely" violate West Virginia children's rights, (JA 079 at ¶ 9). DHHR's chronic and routine unconstitutional conduct results in harm to a transitory, temporary population. There will always be children in West Virginia harmed by DHHR's actions. *See Gerstein*, 420 U.S. at 110 n.11 ("[I]n this case the constant existence of a class of persons suffering the deprivation is certain"). "[T]he transitory nature of the conduct giving rise to the suit…effectively insulate[s] defendants' conduct from review." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013).

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully ask this Court to find that the district court erred and abused its discretion in granting Defendants' motion to abstain and in granting Defendants' motion to dismiss the claims of six Named Plaintiffs as moot based on each of the four issues raised in Section II, *supra*, and reverse the district court's decision.

## VII.   REQUEST FOR ORAL ARGUMENT

Under Local Rule 34(a), Plaintiff-Appellants respectfully request oral argument. Given the unique complexity of this case, Plaintiff-Appellants believe that oral arguments would assist the Court's consideration in this matter.

Dated: November 8, 2021

/s/ Marcia Robinson Lowry
A BETTER CHILDHOOD
Marcia Robinson Lowry
mlowry@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456
Fax: (212) 692-0415


/s/ Richard W. Walters
Shaffer & Shaffer, PLLC,
Richard W. Walters
rwalters@shafferlaw.net
J. Alexander Meade
ameade@shafferlaw.net
Shaffer & Shaffer, PLLC,
2116 Kanawha Boulevard, East
Post Office Box 3973
Charleston, West Virginia 25339-3973
Tel: (304) 369-0511
Fax: (304) 369-5431


/s/ Lori Waller
Disability Rights of West Virginia
Lori Waller, WVSB #11303
lwaller@drofwv.org
1207 Quarrier Street, Suite 400

Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

***Counsel for Plaintiffs-Appellants***

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents. Table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   This brief contains 6,970 words.

2. This brief complies with the typeface and type style requirements because:

   This brief has been prepared in a proportionally spaced typeface using *Microsoft Word in 14 pt Times New Roman*.


Dated: <u>November 8, 2021</u>              <u>*/s/ Richard W. Walters*</u>
                                                    *Counsel for Appellants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 8th day of November, 2021, I caused this Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

*/s/ Richard W. Walters*
*Counsel for Appellants*